EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)
(Cite as: 2001 WL 777083 (N.D.Cal.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, N.D. California.
ACLARA BIOSCIENCES, INC., Plaintiff,
v.
CALIPER TECHNOLOGIES CORP., Defendant.
**No. C99-1968 CRB (JCS).**

June 16, 2000.

ORDER GRANTING IN PART AND DENYING IN PART CALIPER'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND GRANTING IN PART AND DENYING IN PART ACLARA'S
COUNTER MOTION TO COMPEL PRODUCTION OF DOCUMENTS

SPERO, Magistrate J.

*1 Defendant Caliper's Motion To Compel Production Of Documents and Plaintiff ACLARA's Counter Motion To Compel Production Of Documents came on for hearing on April 28, 2000 at 9:30 a.m. For the reasons stated below, Caliper's Motion To Compel Production Of Documents is GRANTED in part and DENIED in part. ACLARA's Counter Motion To Compel Production Of Documents is GRANTED in part and DENIED in part.

I. *INTRODUCTION*

Defendant Caliper Technologies Corporation ("Caliper") moves for an order compelling ACLARA Biosciences, Inc. ("ACLARA") to produce documents for which ACLARA claims attorney-client privilege and attorney work product protections. Caliper argues that ACLARA has waived these protections by producing other privileged documents and by allowing witnesses to testify in depositions as to attorney-client communications. Caliper argues that this waiver extends to all attorney-client communications, and attorney work product, on the subject matter of the preparation and prosecution of the applications that lead to the issuance of the '015 patent. Memorandum Of Points And Authorities In Support Of Caliper's Motion To Compel Production Of Documents at 1.

ACLARA brings a counter motion seeking an order compelling Caliper to produce documents for which Caliper claims attorney-client privilege. ACLARA argues that Caliper has waived attorney-client privilege by producing two letters to Caliper from its attorneys and that the waiver by Caliper extends to all documents on the subject matters contained in the two letters from counsel. ACLARA's Counter Motion To Compel Production Of Documents at 9.

II. *BACKGROUND*

A. *The Patent In Suit*

ACLARA and Caliper are competitors in the production and sale of microfluidic devices for genetic analysis, drug screening and clinical diagnostics. Complaint at 1. In this action, ACLARA alleges that Caliper is wilfully infringing a patent owned by ACLARA, United States Patent Number 5,750,015 (the " '015 patent"), entitled "Method and Device for Moving Molecules by the Application of a Plurality of Electrical Fields," issued May 12, 1998. *Id.* at 2. The '015 patent is a continuation of several earlier patent applications and claims the benefit of the filing date of Patent No. 5,126,022 (the " '022 patent"), filed February 28, 1990. *See* Exhibit A to Complaint ('015 patent).

In obtaining the '015 patent, ACLARA (formerly, Soane BioSciences, Inc.) was represented by the law firm of Flehr, Hohbach, Test, Albritton & Herbert LLP ("Flehr"). *Id.* Between 1991 and mid-1996, Bertram Rowland was of-counsel at Flehr (*see* Declaration of Bertram Rowland in Opposition to Motion to Compel Compliance With Subpoena to Bertram Rowland) and assisted in the preparation of the '015 patent

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

application.

According to Caliper, Flehr and Rowland also performed legal work for Caliper between December 1995 and February 1996. Memorandum Of Points And Authorities In Support Of Caliper's Motion To Compel Further Responses To Subpoena And Production Of Documents From Bertram Rowland at 1. Caliper alleges it disclosed confidential information to Flehr and Rowland while seeking advice on patent and other intellectual property matters. *See* Caliper's Counterclaims For Declaratory Relief of Non-Infringement, Invalidity and Unenforceability at 5-6. Caliper further alleges that Rowland and Flehr used the confidential information disclosed by Caliper in prosecuting the '015 Patent on behalf of ACLARA. *Id.* at 10. On the basis of similar allegations, Caliper sued Rowland, ACLARA and Flehr in Santa Clara Superior Court on March 22, 1999, claiming breach of fiduciary duty against Rowland and Flehr, and misappropriation of trade secrets and conversion against all defendants (the "State Court Action"). Memorandum of Points and Authorities in Support of Caliper's Motion to Compel Compliance With Subpoena to Bertram Rowland at 2.

*2 On April 22, 1999, ACLARA brought this action against Caliper. Rowland and Flehr are not parties to this action. Caliper denies the allegation of infringement and has asserted defenses of invalidity under 35 U.S.C. § 102, 103, and 112 and unenforceability based on Rowland's allegedly unethical conduct. *Id.*

B. *Summary Of Argument On Caliper's Motion To Compel*

In response to document requests from Caliper, ACLARA asserted attorney-client privilege and work product protection for a number of documents. Declaration of David M. Jolley in Support of Caliper's Motion to Compel Production of Documents ("Jolley Declaration") at Exh. 13. [FN1] Caliper challenges what it argues is an unjustifiably selective waiver of attorney-client privilege by ACLARA. In order to respond to the allegations of misappropriation of trade secrets in the State Action, and to the allegations of unethical conduct in this action, ACLARA has voluntarily produced all privileged communications between Rowland and ACLARA that are responsive to Caliper's requests up to 1999, when Rowland became in-house counsel for ACLARA. Jolley Declaration at Exh. 15 (January 28, 2000 letter from Stephen Freccero to Steven Ellenberg). Counsel for ACLARA also permitted deposition testimony on these communications in the State Court Action. ACLARA takes the position that it may waive attorney-client privilege as to communications between Rowland and ACLARA without waiving the privilege as to any other communications. As a result, ACLARA has declined to produce documents that are privileged because they reflect communication between ACLARA and any attorney other than Rowland.

> FN1. Exhibit 13 to the Jolley Declaration consists of the privilege logs of ACLARA both in this case and in the State Court Action. However, at oral argument, the parties advised the Court that they had stipulated that the production of documents in the State Court Action would be applicable to this case, and vice versa. Accordingly, the Court construes Caliper's motion as seeking production of the documents listed in Exhibit 13.

Caliper argues that the scope of waiver is determined on the basis of the subject matter of the communications as to which privilege has been waived (based upon the actual documents produced and deposition testimony), not on the intent of the party waiving the privilege. Caliper asserts that the subject matter of the waiver covers all communications with all ACLARA counsel relevant to the preparation and prosecution of the applications leading to the issuance of the '015 patent, not just those between ACLARA and Rowland. As to the time limitation, Caliper asks the court to "confirm that all pre-litigation communications with Rowland and ACLARA's other attorneys on the disclosed subjects are within the scope of the waiver." Motion at 6, n. 8. Caliper also asserts that the waiver of attorney-client privilege as to these documents also gives rise to a work product waiver.

In its Opposition to Caliper's Motion, ACLARA does not question the general proposition that the scope of waiver is dependent upon the subject matter of the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)
(Cite as: 2001 WL 777083 (N.D.Cal.))

Page 3

communications that have been revealed. Nor does it deny that it intentionally waived the privilege as to all communications between ACLARA and Rowland up to 1999. [FN2] However, ACLARA asserts that because its waiver was a purely defensive act by Rowland to counter the assertion that Rowland misappropriated Caliper trade secrets, the waiver should be construed narrowly. Specifically, the scope of the waiver should be construed no more broadly than the documents that have already been produced. ACLARA further argues that even if the scope of the waiver is found to encompass communications with other attorneys and a later time period, it should be limited to the specific narrow issues addressed in the documents that have already been produced, not the broad subject matter proposed by Caliper. ACLARA argues that the record presented by Caliper in support of its motion is inadequate to support a finding of broad waiver by ACLARA. Finally, ACLARA challenges Caliper's assertion that waiver of attorney-client privilege also results in waiver of work product protection.

> FN2. In a letter from ACLARA counsel Stephen Freccero to Caliper counsel Steven Ellenberg on this subject, Freccero stated that "in response to Caliper's specific discovery document requests, ACLARA has provided communications between Dr. Rowland and ACLARA's predecessor to provide legal services. I have represented to you that no such responsive documents have been withheld on the grounds of privilege." Exhibit 15 to Jolley Declaration at 2.

C. *Summary Of Arguments On ACLARA's Motion To Compel*

\*3 In its counter motion, ACLARA seeks an order compelling Caliper to produce privileged documents on the subject-matters addressed in two opinion letters provided to Caliper by its attorneys at Townsend & Townsend and passed on to Rowland by Caliper in 1996 (the "1996 Opinion Letters"). ACLARA's Counter Motion To Compel Production Of Documents at 9. Caliper produced these letters in the State Court Action on the basis that Cal. Evid.Code § 958 required it to produce all communications between Caliper and Rowland. [FN3] *See* Opposition at 2. ACLARA argues that Caliper's production of all of its communications with Rowland gives rise to waiver of privilege on all subjects addressed in those communications, focusing in particular on the 1996 Opinion Letters. ACLARA Counter Motion at 3. In addition, ACLARA requests that this court compel Caliper to produce an unredacted version of a 1998 letter (the "1998 Opinion Letter") to Caliper from Townsend & Townsend upon which Caliper bases its advice of counsel defense to ACLARA's wilful infringement claim in this action.

> FN3. Section 958 of the California Evidence Code provides that "[t]here is no privilege ... as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."

Caliper responds that its production of all of its communications with Rowland was required under Cal. Evid.Code § 958, but that state law does *not* require production of privileged communications between a client and any attorney other than the attorney accused of misconduct. Caliper's Opposition at 5-8. ACLARA counters in its supplemental brief that federal common law rather than state law applies to this discovery issue and that under federal common law, Caliper has made a voluntary disclosure that results in waiver of privilege as to all communications on the same subject matter.

In response to ACLARA's assertion that Caliper must produce an unredacted version of the 1998 Opinion Letter, Caliper argues that because it is asserting an advice of counsel defense it is has appropriately produced all documents (including otherwise privileged communications) that relate to the enforceability, validity and infringement of the '015 patent from the date that that patent issued (May 12, 1998) and that the redacted portion of the second advice letter did not address any of these issues. Caliper's Opposition at 11-12; *see also* Darwin Decl. (stating that in defending against ACLARA's wilful infringement allegation, Caliper intends to rely on a 1998 opinion letter in which its attorneys concluded that Caliper was not infringing the '015 patent and verifying that Caliper has produced all documents in its possession, custody and control that

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

address the infringement, validity and enforceability of that patent from the date of its issuance). Caliper states that the redacted portion of the letter addresses possible state law causes of action that Caliper might have against Rowland, which Caliper does not believe are related to the enforceability, validity or infringement of the '015 patent.

III. *ANALYSIS*

A. *Applicable Law*

Because jurisdiction in this action is based upon the existence of a federal question, the federal common law of privilege applies to the discovery disputes raised in Caliper's motion and ACLARA's Counter Motion. F.R. Evid. 501; *United States v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1519, fn. 6 (9th Cir.1987).

B. *Caliper's Motion To Compel*

*4 Caliper seeks to compel the production of documents for which ACLARA asserts attorney-client privilege regarding the preparation and prosecution of the applications that lead to the '015 patent. This argument is based on the claim that ACLARA has effected a subject matter waiver by voluntarily disclosing all communications between Rowland and ACLARA up until early 1999. In addition, Caliper asserts that ACLARA has waived any work product protection as to the same subject matter.

1. *Attorney-Client Privilege*

It is well established that voluntary disclosure of the content of an attorney-client communication waives attorney-client privilege as to all other communications on the same subject matter. *Weil v. Investment Indicators,* 647 F.2d 18, 24 (9th Cir.1981). This rule is based upon considerations of fairness:

> [W]hen the (privilege holder's) conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.

*Id.* (quoting VIII J. Wigmore, Evidence § 2291 at 554 (McNaughton rev.1961)). Further, the burden of proving that attorney-client privilege applies rests with the party asserting the privilege, and one element of that burden is to prove that the privilege has not been waived. *Id.* at 25. Finally, a party's "bare assertion that it did not subjectively intend to waive the privilege is insufficient to make out the necessary element of non-waiver." *Id.* at 25.

These principles were applied in *Starsight Telecast v. Gemstar Development Corp.,* 158 F.R.D. 650 (N.D.Cal.1994). There, the plaintiff alleged infringement by defendant of plaintiff's own patent. Plaintiff also sought a declaration by the court that defendant's competing patent, the '713 patent, was invalid because it was obtained through inequitable conduct, namely, that defendant had failed to disclose material prior art to the Patent Office. *Id.* at 651. The defendant voluntarily produced "all privileged documents created during the prosecution of the '713 patent, issued on March 13, 1990, that concern[ed] any item of alleged prior art that [the plaintiff had] identified in its charges of inequitable conduct set forth in its first amended complaint." *Id.* The plaintiff, however, asserted that the scope of the waiver was much broader, in light of deposition testimony and declarations produced by the defendant. *Id.* at 652-653. In particular, the plaintiff asserted that defendant had waived privilege as to *all* documents related to the prosecution of the '713 patent, including claims included in the original application as well as the amended claims that ultimately issued as the '713 patent. *Id.* at 652. Plaintiff also asserted that the waiver covered certain documents related to Supplemental Information Disclosure Statements and all documents related to prior art in particular fields related to the '713 patent. *Id.*

*5 The court began by addressing the question of whether there was, in fact a waiver of attorney-client privilege. *Id.* Based on the deposition testimony by the defendant's counsel in which he stated that all prior art relevant to the '713 patent had been revealed to the PTO, the court concluded that defendant had waived attorney-client privilege. *Id.* at 654. Further, the court concluded that the testimony which had given rise to

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

waiver addressed two issues: 1) knowledge of purported prior art; and 2) relevancy or materiality of such art. *Id.*

The court, however, rejected plaintiff's broad definition of the subject matter as including all documents relevant to the prosecution of the '713 patent, noting that to find such a waiver under the facts of that case would not be consistent with the rule that subject matter waiver should be construed narrowly and should only be found where it would be unfair to deny discovery to the opposing party. *Id.* at 655. Instead, the court defined the subject matter of the waiver as extending to "how the alleged prior art references identified in plaintiff's charges of inequitable conduct relate to the '713 patent application before the PTO, including continuation and continuation-in-part applications arising out of the application that matured into the '713 patent." *Id.* After reviewing the documents at issue *in camera*, the court in *Starsight* ordered the defendant to produce a number of documents which it found to fall within this waiver while rejecting the plaintiff's argument as to many other documents that the court concluded would not "shed any new light" on the documents already produced. *Id.*

The decisions in *Weil* and *Starsight* reiterate two principles: First, the scope of the subject matter of a waiver of the privilege should be construed narrowly. Second, this narrow construction should be grounded in the production necessary to prevent unfairness to the party seeking production.

A number of courts in this district have also addressed the issue of waiver of attorney-client privilege in the patent context where defendants have asserted an advice of counsel defense. *See, e.g., SNK Corp. of America v. Atlus Dream Entertainment Co., 188 F.R.D. 566 (N.D.Cal.1999); Mushroom Associates v. Monterey Mushrooms, Inc., 24 U.S.P.Q.2d 1767 (N.D.Cal.1992); Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926 (N.D.Cal.1976).* While in these cases waiver has been found on the basis of the mere assertion of an advice of counsel defense--as opposed to finding waiver on the basis of deposition testimony or the actual production of privilege documents, as Caliper argues has occurred here--the issue of fairness is similar.

For instance, in *Mushroom Associates v. Monterey Mushrooms, Inc.*, 24 U.S.P.Q.2d 1767 (N.D.Cal.1992), the defendant in a patent infringement action asserted an advice of counsel defense to plaintiff's allegation of wilful infringement. *Id.* at 1678. On this basis, plaintiff asserted that it was entitled to all privileged documents relevant to the infringement of the patent at issue. *Id.* Defendant, on the other hand, asserted that its reliance on advice of counsel only waived attorney-client privilege as to *wilful* infringement and apparently sought to limit the waiver to a single attorney opinion letter, which was to be the basis for defendant's advice of counsel defense. *Id.* at 1770. The court rejected defendant's position, finding that defendants had narrowed the scope of the waiver too far. *Id.* at 1770. The court stated that "[a] party needs access to privileged information underlying the advisory letter because it cannot analyze reliance upon the advice of counsel without reference to the circumstances surrounding the issuance of the advice or the formation of the opinions contained in the advice." *Id.* On this basis, the court found that defendants had waived attorney-client privilege with respect to "all documents pertaining to the infringement of the [patent at issue]." *Id.*

*6 Here, the key issue in determining the scope of ACLARA's waiver is fairness. When considered in the context of the inequitable conduct defense Caliper seeks to assert (and the similar allegations in the State Court Action), ACLARA's attempt to limit its voluntary waiver to communications between ACLARA and Rowland would be unfair to Caliper. [FN4]

> FN4. The Court rejects ACLARA's assertion that ACLARA merely permitted Rowland to waive the privilege as to his communications with ACLARA. (Opposition at 4.) ACLARA itself voluntarily waived the privilege as to its communications with counsel. Indeed, ACLARA has stated on numerous occasions that ACLARA disclosed privileged communications between Rowland and ACLARA in order to "to dispel the serious allegations leveled against it by Caliper." *See, e.g.,* ACLARA's Opposition To Caliper's Motion To Compel Production Of Documents at 1. Moreover, as shown below, most of the

testimony during depositions in the State Court Action which resulted in the subject matter waiver here, was by employees of ACLARA--not by its counsel. Those disclosures were entirely voluntary. Accordingly, ACLARA's reference to the attorney's self-defense exception to the attorney-client privilege is not relevant. (Opposition at 3-4.) While an attorney, faced with a suit, may have a limited right to defend himself using otherwise privileged communication of which he had knowledge, no such "self-defense exception" exists with respect to the client. As a result, because the attorney can disclose privileged information to defend himself *without the consent of the client*, courts construe any waiver due to those disclosures narrowly to protect the interests of the client. In the instant case, on the other hand, ACLARA faced the decision of whether or not to defend the State Court Action, and this action, using privileged information. It chose to do so and voluntarily disclosed privileged communications. This effects a subject matter waiver. In any event, the distinction suggested by ACLARA--that this case be treated as a waiver affected by the "self defense exception" rather than a "voluntary disclosure" is in this context a distinction without a difference. The authorities cited by ACLARA agree that the waiver, in the context of the attorney "self-defense exception", is construed narrowly and is confined to the subject matter with respect to which the exception is invoked. *See, e.g., In re National Mortgage Equity Corp.*, 120 F.R.D. 687, 692 (C.D.Cal.1988). As described above, even where there is a voluntary disclosure by the client which results in a waiver--as opposed to the disclosure by the attorney without the consent of the client under the attorney self-defense exception--the subject matter waiver is confined to the subject matter of the disclosure which should be narrowly construed. *Starsight Telecast, supra*, 158 F.R.D. at 655.

It would be unfair to allow ACLARA to limit its waiver to communications with Rowland when a key issue in this action will be whether Rowland passed on Caliper's alleged trade secrets to another Flehr attorney, who may have used them to ACLARA's advantage. In order to prove that Rowland and Flehr did not take Caliper trade secrets and pass them on to ACLARA or otherwise use them to ACLARA's advantage, ACLARA has produced all of its communications with Rowland through the beginning of 1999. ACLARA may seek to prove by this evidence that ACLARA did not misappropriate or misuse any of Caliper's trade secrets in applying for and prosecuting the '015 patent. These disclosures are likely to be highly relevant in this action, where Caliper is asserting a defense based upon ACLARA's allegedly inequitable conduct (which, like the misappropriation claim in state court, also turns, at least in part, on whether ACLARA used information obtained from Caliper in ACLARA's prosecution of the '015 patent).

In response, Caliper must be allowed to conduct the discovery necessary to challenge these assertions. To do so, Caliper should be allowed to examine the communication between Flehr attorneys other than Rowland and ACLARA. If this discovery were not permitted, ACLARA would have been allowed to show "clean" communication showing no Caliper proprietary information passing to ACLARA in its communications with Rowland--while shielding communication between ACLARA and other lawyers in the same law firm. Under this scenerio, even if Rowland told other Flehr lawyers about Caliper trade secrets, and even if other Flehr lawyer looked at the Caliper file, communications to ACLARA containing that information would be protected from disclosure. While these events may or may not have taken place, it would be unfair to allow disclosure of only the communications that ACLARA choses.

The Court also concludes that the waiver, while not appropriately limited to communications between Rowland and ACLARA, is limited to otherwise privileged communications between any Flehr attorney and ACLARA. Communications with Rowland were disclosed in the context of allegations of improper use

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)
(Cite as: 2001 WL 777083 (N.D.Cal.))

Page 7

of Caliper trade secrets by Flehr. While discovery of communications between ACLARA and other Flehr attorneys might reasonably and fairly be expected to lead to admissible evidence on this issue, it is much less likely that discovery of communications with non-Flehr attorneys would lead to the production of relevant material.

While limited to communications with any Flehr attorney, the Court concludes, based primarily upon deposition testimony that has been given by various ACLARA principals, that a sufficient record exists to support a finding that this waiver of attorney-client privilege by ACLARA extends to documents that refer or relate to the applications and prosecution of the applications leading to the issuance of the '015 patent, beginning in December 1995, when Rowland first began to represent Caliper and ending on the date the '015 patent issued, May 12, 1998. The Court finds that the following deposition testimony revealed privileged communications on the subject of the prosecution of the '015 patent and the applications that led to the issuance of the '015 patent:

*Rowland Deposition*
*7 • Rowland testifies that Dr. Hooper asked him to review the file histories of the applications that led to the issuance of the '015 patent because Hooper believed that the claims were not broad enough (Rowland Deposition at 97:1-23);
• Rowland testifies that he told Dr. Hooper that the applications that later became the '015 patent supported plastic microchannels (Rowland Deposition at 151:23-25);
• Rowland testifies that as of late 1996 he believed that if the Soane application (later the '015 patent) were construed to support microchannels, as he had advised ACLARA the application would, this construction would preclude Caliper from using organic substrates in certain ways (Rowland Deposition at 152:16--154:5).

*Hooper Deposition*
• Dr. Hooper, Executive Vice President and Chief Scientific Officer of ACLARA, testifies about December 20, 1995 meeting at Flehr in which Dr. Hooper discussed with Rowland the technologies contained on the '022 patent and how the applications they were working on would be drafted as a continuation of the '022 patent (Hooper Deposition at 302:15-304:9);
• Dr. Hooper testifies that he orally instructed Flehr to prepare the patent application that was filed in March 1996 and that he believed that he may have provided to Flehr a draft of claim language that he wrote for that application (Hooper Deposition at 308:11-309: 7);
• Dr. Hooper testifies that he discussed with Rowland the fact that he wanted to file the March 1996 application as a continuation of the '022 patent to prosecute claims covering aspects of the invention that were not originally claimed (Hooper Deposition at 312:18-22);
• Dr. Hooper testifies that one of the draft patent applications discussed at the December 20, 1995 meeting at Flehr dealt with plastic microfluidic devices for doing electrokinetic movement and plastic capillaries and that the term "microchannels" was used (Hooper Deposition at 319:2-7);
• Dr. Hooper testifies about his discussions with Rowland concerning prior art relative to manipulating nanoliter fluid volumes in microchannels via electroosmotic flow in the period from December 1995 through the end of 1996 (Hooper Deposition at 345:24--346:11);
• Hooper testifies that he expressed dissatisfaction with the claims in one of the applications in a conversation with Rowland in April or May of 1996 (Hooper Deposition at 380:22--382:5). [FN5]

> FN5. This testimony was given in response to counsel's inquiry as to whether Dr. Hooper recalled "any conversation concerning the claims, after the patent application was filed, with Dr. Rowland." Hooper Deposition at 380:4-6. Counsel for ACLARA instructed Dr. Hooper that he could answer the question so long as he did not reveal the substance of any conversation with Dr. Rowland that occurred after Dr. Rowland became counsel for ACLARA. Hooper Deposition at 380: 11-15. This instruction provides further support for the Court's conclusion that ACLARA has voluntarily waived attorney client privilege as

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-04109-WHA    Document 37-3    Filed 12/12/2007    Page 9 of 15

Not Reported in F.Supp.2d                                                                                            Page 8
Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)
**(Cite as: 2001 WL 777083 (N.D.Cal.))**

to communications that refer or relate to the applications and prosecution of the applications leading to the issuance of the '015 patent.

*Novesky Deposition*
• Dr. Novesky, President and CEO of ACLARA, testifies about meeting with Dr. Rowland to discuss ACLARA's technologies and its need for Dr. Rowland's assistance in obtaining patents for these technologies (Novesky Deposition at 137:22--138:3);
• Dr. Novesky testifies about meeting with Dr. Rowland that occurred in August 1994 in which Rowland used the term "submarine patent" (Novesky Deposition at 300:12--301:25).

With respect to the time limitations, the Court finds that the waiver is limited to communications that occurred after Rowland began to represent Caliper. The inequitable conduct alleged by Caliper could have occurred only after Rowland obtained from Caliper the information that Caliper alleged was misappropriated to benefit ACLARA. Thus, to extend the waiver to communications that occurred before December 1995 would result in a waiver that is broader than that which is necessary to ensure that Caliper has a fair opportunity to develop its inequitable conduct defense. Similarly, the Court finds that the waiver is limited to communications that occurred up to the date on which the '015 patent issued. Privileged communications that occurred after that date are likely to be less relevant to Caliper's efforts to rebut ACLARA's argument that Flehr used no protected Caliper information in the prosecution of the applications that lead to the '015 patent. While the Court acknowledges the possibility that a later-created document on this subject may exist, it finds this possibility too remote to justify the intrusion of finding waiver after the '015 patent issued.

2. *Waiver of Work Product Protection*

*8 Waiver of attorney-client privilege may, but does not necessarily, give rise to waiver of work product protection. *SNK Corp. of America v. Atlus Dream Entertainment Co.*, 188 F.R.D. 566, 571 (N.D.Cal.1999). This is because the policy underlying the work product doctrine differs from the policy upon which attorney-client privilege is based. *Id.* In particular, while "the purpose of the attorney-client privilege is to encourage clients to provide full and complete disclosure of information to their attorneys ... the purpose of the work product [doctrine] is to protect the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery." *Id.* Under Fed. Rule Civ. Proc. 26(b)(3), most work product may be discoverable "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. Rule Civ. Proc. 26(b)(3). *See also Mushroom Associates. v. Monterey Mushrooms Inc.*, 24 U.S.P.O.2d 1767, 1771 (N.D.Cal.1992). Where work product contains an attorney's mental impressions, it may be discoverable where such information is directly at issue and the need for production is compelling. *Id.* (citing *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 931 (N.D.Cal.1976).

When considering whether work product protection has been waived, a court must weigh the need for discovery against the right of an attorney to retain the benefits of his own research. *SNK Corp.*, 188 F.R.D. at 571. "Like the waiver of attorney-client privilege, however, fairness principles should be applied in considering whether work product protection has been waived." *Id.* Thus, for instance, in *Mushroom Associates*, the court found that the defendant had waived its work product protection by asserting advice of counsel in defending against plaintiff's claim of wilful patent infringement. *Mushroom Associates*, 24 U.S.P.Q.2d at 1771. In its analysis, the court began by noting that fairness concerns were as important in considering whether there had been a waiver of workproduct protection as they were in determining whether there had been a waiver of attorney client privilege. *Id.* at 1770. The court went on to point out that where a party relies upon an advice of counsel defense, the opposing party can almost always meet not only the "substantial need" test set out in Rule 26(b)(3) but also the more stringent "compelling need" test that has been established for opinion work product. *Id.* at 1771. This is because the only way to attack the advice of counsel defense is to have access to information about what the attorney

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)
**(Cite as: 2001 WL 777083 (N.D.Cal.))**

Page 9

knew and thought about infringement, as well as the "factors and circumstances surrounding the advice." On this basis, the court ordered the defendant to produce all documents containing work product "relevant to the infringement issue." *Id.*

*9 Here, the nature of the alleged inequitable conduct--that Rowland misappropriated Caliper's trade secrets and used them to benefit ACLARA-- supports the conclusion that work product protection has been waived to the same degree that the attorney-client privilege has been waived. In response to allegations of misappropriation and inequitable conduct, ACLARA has chosen to defend itself by disclosing the communications between itself and its lawyer, including the thoughts and impressions of Rowland. [FN6] Having chosen to put the communications with Rowland, including his thought processes, at issue, ACLARA should expect that Caliper will be entitled to challenge its version of events. Without discovery of work product, Caliper may well find it impossible to challenge ACLARA's assertion that the communications with Rowland prove the absence of any improper conduct because no other Flehr attorney touched the Caliper file or learned about it from Rowland. *See* ACLARA's Brief Re Motion To Compel Production Of Documents at 10. In fact, if the communications between Rowland and ACLARA (which have already been produced) do not reveal any direct communication of these secrets by Rowland to ACLARA, the only way Caliper will be able to prove its inequitable conduct defense will be with evidence that this information was communicated by Rowland to another attorney involved in the prosecution of the '015 patent. Without discovery of work product on this issue, Caliper will be unable to effectively cross-examine ACLARA's witnesses with respect to its inequitable conduct defense. *See Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. at 931 (holding that plaintiff had demonstrated a compelling need for production where defendant asserted an advice of counsel defense and "the principal issue in the case ...[was] the good faith of the defendants in instituting and maintaining the prior patent litigation against plaintiff"). Therefore, the Court finds that Caliper has met the requirement under Rule 26 that it demonstrate a compelling need for the production of work product documents reflecting the work product of Rowland and all other Flehr attorneys that refer or relate to the applications and prosecution of the applications leading to the issuance of the '015 patent, beginning in December 1995, when Rowland first began to represent Caliper and ending on the date the '015 patent issued, May 12, 1998.

> FN6. The Court notes that in his deposition, Rowland himself testified concerning his internal thought processes when he testified that he believed in February 1996 that if the Soane application (later the '015 patent) were construed to support microchannels, as he had advised ACLARA the application would be, this construction would preclude Caliper from using organic substrates in certain ways. Rowland Deposition at 152:16--154:5.

*C. ACLARA's Counter Motion To Compel*

*1. Waiver Based Upon Production Of The Opinion Letters*

ACLARA argues in its counter motion that by producing two letters prepared for Caliper by its attorneys at Townsend & Townsend in 1996, Caliper waived attorney-client privilege as to all subject-matters addressed in those letters and must produce documents and allow witnesses to testify on those subjects regardless. Caliper, on the other hand, asserts that these documents were produced under Cal. Evid.Code § 958 and that both the facts of this case and the California case law governing § 958 warrant treating Caliper's production of these documents differently from ACLARA's voluntary waiver.

*10 The Court finds that the disclosures by Caliper do not give rise to the same subject matter waiver that were effected by ACLARA's voluntary disclosures. The filing of the State Action, the production of the two 1996 letters from counsel, and the defenses raised in this action, require the production of all documents reflecting otherwise privileged communications between Caliper and Flehr or Rowland.

In the State Action, Caliper accused its counsel, Rowland and Flehr, of a breach of duty arising out of

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

the attorney client relationship. This act, under California law, barred Caliper from asserting the attorney client privilege with respect to communications with Rowland and Flehr. As a result, Caliper produced all communications with, and all documents provided to, Rowland. [FN7] Memorandum Of Points And Authorities In Support Of Caliper's Opposition To ACLARA's Counter Motion To Compel Production Of Documents at 2. This included the two 1996 Opinion Letters. *Id.* ACLARA does not dispute that Caliper was required to produce these opinion letters under § 958. To the contrary, ACLARA explicitly states that "by accusing Dr. Rowland of misappropriation of trade secrets, and of professional malpractice, Caliper expressly waived any claim of privilege concerning its conversations with Dr. Rowland." ACLARA cites § 958 in support of this statement.

> FN7. There is no evidence that Caliper communicated with any attorney at Flehr other than Rowland. However, to the extent that Caliper has withheld any documents on the basis that they contain privileged communications with any Flehr attorney other than Rowland, as indicated below, Caliper is order to produce those documents.

However, ACLARA then goes on to assert that "under the standard Caliper asserts in its pending motion, Caliper has also waived the privilege, without temporal limitation, as to each of the subject matters discussed with Dr. Rowland." Counter Motion at 2. [FN8]

> FN8. As noted above, Caliper does not dispute that it has waived privilege as to communications concerning the validity, enforceability and infringement of the '015 patent made after its issuance, in May 1998. However, the letters on which ACLARA is basing its waiver argument here predate the issuance of the patent by two years and therefore do not address whether Caliper was willfully infringing that patent.

As discussed above, the general rule under federal common law is that voluntary disclosure of the content of an attorney-client communication waives attorney-client privilege as to all other communications on the same subject matter. *Weil v. Investment Indicators,* 647 F.2d 18, 24 (9th Cir.1981). This rule is based upon considerations of fairness. *Id.* Similarly, where a party relies upon an advice of counsel defense, federal courts have held that the assertion of that defense gives rise to waiver of privilege and determine the scope of the waiver based on fairness concerns. *See, e.g., SNK Corp. of America v. Atlus Dream Entertainment Co.,* 188 F.R.D. 566 (N.D.Cal.1999); *Mushroom Associates v. Monterey Mushrooms, Inc.,* 24 U.S.P.Q.2d 1767 (N.D.Cal.1992); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Cal.1976).

The same concerns of fairness have been relied on by California courts addressing the issue of the scope of the waiver of attorney-client privilege under § 958. That section bars the assertion of a privilege where an attorney has been accused of breach of duty. California courts have held that this waiver does not extend to communications with attorneys other than the accused attorney on the same subject matter because the defendant need not have access to these communications to adequately defend himself against allegations of misconduct, even if those communications are relevant to the litigation. *See, e.g., Schlumberger Limited v. Superior Court of Los Angeles County,* 115 Cal.App.3d 386, 171 Cal.Rptr. 413 (1981) (holding that where plaintiff alleged malpractice by its former attorneys in connection with their representation in a bankruptcy matter, plaintiff was not required under § 958 to disclose any communications with its subsequent attorneys and noting that "[p]rivileged communications do not become discoverable because they are related to issues raised in the litigation."). [FN9]

> FN9. Caliper begins its discussion of this issue by looking at *Glade v. Superior Court,* 76 Cal.App.3d 738, 143 Cal.Rptr. 119 (1978), to which ACLARA cites in its counter motion. In *Glade,* the court held that § 958 did not require the production of communications between an attorney who plaintiff alleged had represented clients with adverse interests and those clients, where the other clients were not parties to the action. *Id.* at 746, 143 Cal.Rptr.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

119. The court reasoned that "[i]f section 958 were construed to extend to this situation, a litigant who tendered an issue of breach relative to his own representation by an attorney would be able unilaterally to waive the attorney-client privilege held by other clients of the same attorney." Here, the extension of § 958 to attorneys other than Rowland does not present such a problem because the communications ACLARA seeks do not involve clients other than Caliper. On the other hand, Caliper is correct in asserting that *Glade* does not lend any affirmative to support to ACLARA's argument that Caliper's production under § 958 extends to Caliper attorneys other than Rowland, none of whom have been alleged to have committed any misconduct.

*11 For instance, in *Brockway v. State Bar of California*, 53 Cal.3d 51, 278 Cal.Rptr. 836, 806 P.2d 308 (1991), the California Supreme Court held that § 958 did not require that a client reveal communications between himself and another attorney concerning a dispute between the client and that attorney. *Id.* at 63, 278 Cal.Rptr. 836, 806 P.2d 308. There, an attorney was accused of misconduct by a client whom the attorney represented in a criminal case and the case was investigated by the State Bar of California. *Id.* at 59, 278 Cal.Rptr. 836, 806 P.2d 308. The dispute involved, among other things, a disagreement between the client and the attorney concerning the terms of the retainer agreement. *Id.* While the attorney was still representing the client, another attorney, Waco, attempted to resolve the dispute, at which time he engaged in confidential discussions with the client on the subject of the terms of the retainer agreement. *Id.* at 61, 278 Cal.Rptr. 836, 806 P.2d 308. In the proceeding in the State Bar Court, the attorney accused of misconduct sought to compel testimony by Waco concerning what the client had told Waco about the retainer agreement. *Id.* The State Bar Court refused to compel this testimony, and the California Supreme Court held that the State Bar Court was correct. *Id.* at 63, 278 Cal.Rptr. 836, 806 P.2d 308. In particular, the court stated:

> Evidence Code section 958 creates an exception to the privilege for communications "relevant to an issue of breach, by the lawyer[,] ... of a duty arising out of the lawyer-client relationship." Contrary to what petitioner claims, the statute is not a general client-litigant exception allowing disclosure of any privileged communication simply because it is raised in litigation.... Evidence Code section 958 only authorizes disclosure of relevant communications between a client (e.g., Jones) and an attorney charged with professional wrongdoing (e.g., petitioner)....This approach gives the attorney a meaningful opportunity to defend against the charge, but does not deter the client from confiding in other attorneys (e.g., Waco) about the dispute. Since nothing in the record suggests Jones has otherwise waived the privilege as to confidential communications with Waco), no error occurred.

*Id.* at 63-64, 278 Cal.Rptr. 836, 806 P.2d 308 (citations omitted). The court went on to explicitly reject the attorney's assertion that the proceeding was unfair because the State Bar Court did not find a waiver of privilege with respect to communications between the client and Waco. *Id.* at 64, 278 Cal.Rptr. 836, 806 P.2d 308.

Under state law, therefore, the filing of the State Action did not waive the attorney client privilege with respect to any counsel other than Flehr and Rowland, but did required the production of the 1996 Opinion Letters. There is no authority for the proposition that this production, required by state law, affects any broader waiver in this Court.

Moreover, the Court finds the reasoning of the California cases applying § 958 both persuasive and consistent with federal common law governing voluntary waiver. On this basis, the Court concludes that to the extent that Caliper's disclosure of its communications with Rowland are a voluntary disclosure under federal common law, that disclosure goes only to the issue of whether ACLARA, through Rowland and Flehr, misappropriated Caliper trade secrets. Fairness does not require that this waiver be extended to communications with attorneys other than Rowland and Flehr.

*12 The Court rejects ACLARA's alternative theory, based upon *Southern California Gas Company v.*

*Public Utilities Commission*, 50 Cal.3d 31, 265 Cal.Rptr. 801, 784 P.2d 1373 (1990) and *Merritt v. Superior Court of Los Angeles*, 9 Cal.App.3d 721, 88 Cal.Rptr. 337 (1970), that the production of the 1996 Townsend letters place advice of counsel in issue and therefore give rise to a subject matter waiver with respect to Caliper's communications with attorneys other than Rowland and Flehr.

In *Southern California Gas Company*, the gas company sought approval from the Public Utilities Commission ("PUC") to recover costs for a buy-out which the gas company asserted was reasonable. *Id.* at 35, 265 Cal.Rptr. 801, 784 P.2d 1373. The PUC questioned the reasonableness of the buy-out and took the position that it could have been avoided by simply terminating the disadvantageous contract that the gas company argued necessitated the buy-out. *Id.* at 36, 265 Cal.Rptr. 801, 784 P.2d 1373. The PUC then held that by seeking to recover costs, the gas company had impliedly waived attorney-client privilege as to communications related to the reasonableness of the buy-out because the gas company would only be entitled to recover costs if it acted reasonably, and a crucial issue in making the determination as to the reasonableness of the buy-out was the advice that the gas company had received from its attorneys. *Id.* at 39-40, 265 Cal.Rptr. 801, 784 P.2d 1373.

The California Supreme court rejected the PUC's position, holding that the gas company had not waived attorney-client privilege as to the buy-out. *Id.* at 43, 265 Cal.Rptr. 801, 784 P.2d 1373. The court began by recognizing the principal that "the person or entity seeking discovery can show waiver by showing that the client has put the otherwise privileged communication directly at issue and that disclosure is essential for a fair adjudication of the action." *Id.* at 40, 265 Cal.Rptr. 801, 784 P.2d 1373. The court then drew a distinction, based upon both California law and federal common law, between situations in which the substance of the communication is placed in issue by an assertion that the client relied on advice of counsel and those situations in which the substance of the communication "simply represents one of several forms of indirect evidence on the matter." *Id.* at 41, 265 Cal.Rptr. 801, 784 P.2d 1373. The court concluded that the gas company had done nothing to place in issue its intent or its attorney's advice because it did not assert an advice of counsel defense, even though the attorney's advice may have been highly relevant to the gas company's reasonableness. *Id.* at 43, 265 Cal.Rptr. 801, 784 P.2d 1373. The court noted that "actual legal advice may be relevant, but it is not essential." *Id.* at 45, 265 Cal.Rptr. 801, 784 P.2d 1373.

Here, aside from Caliper's advice of counsel defense to wilful infringement (discussed below), Caliper has not placed in issue the subjective intent or advice of its attorneys at Townsend & Townsend, either by producing the 1996 Opinion Letters or by the nature of its claims or defenses. Rather, the privileged communications at issue are those between Flehr attorneys, including Rowland, and Caliper.

Nor does the case upon which ACLARA relies in its Reply brief, *Merritt v. Superior Court of Los Angeles*, 9 Cal.App.3d 721, 88 Cal.Rptr. 337 (Cal.Ct.App.1970), support its position that Caliper has placed in issue its earlier communications with its attorneys at Townsend & Townsend. In *Merritt*, which was decided before § 958 was adopted, the court held that while the California Evidence Code did not contain an exception to attorney-client privilege for situations in which a client brings into issue his client's conduct or state of mind, such an exception did exist under the common law. *Id.* at 730, 88 Cal.Rptr. 337. On that basis, the court reasoned that where the plaintiff alleged that the defendant's attorney had confused the plaintiff's attorney and impeded his attorney's ability to settle the claim, plaintiff had waived attorney-client privilege as to communications with his own attorney. In reaching this conclusion, the court emphasized that the trial court "neither expressly nor impliedly held that any plaintiff who brings an action against an insurer for bad faith refusal to settle waives the attorney-client privilege with respect to the prior negligence action.... The court simply found that plaintiff had initiated a lawsuit in which he has placed in issue the decisions, conclusions and mental state of his then attorneys, particularly as to their confusion and disability allegedly caused defendant's conduct which precluded them from making a settlement offer." *Id.* In this case, Caliper has not placed in issue the subjective intent of its attorneys with

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)  
(Cite as: 2001 WL 777083 (N.D.Cal.))

Page 13

Townsend & Townsend and thus *Merritt* is not applicable.

*13 Although Caliper does assert an advice of counsel defense in response to ACLARA's allegation of wilful infringement, it is hard to see how letters written two years before the '015 issued can be essential (or even relevant) to a defense that focuses on the alleged infringer's conduct *after* it learns of the patent allegedly infringed. *See McCormick-Morgan, Inc. v. Teledyne Industries,* 134 F.R.D. 275, 283 (N.D.Cal.1991)(noting that infringement is not wilful where the alleged infringer, upon learning of the patent, made a reasonable effort to determine whether continued sale of its products would offend rights held by the other person held under the patent). Therefore, the Court finds ACLARA's argument that the 1996 Townsend & Townsend letters should be treated as placing "advice of counsel" in issue to be unconvincing. [FN10]

> FN10. Caliper has also asserted a defense of inequitable conduct in this case which relies, in part, on the claim that ACLARA, through Rowland and Flehr, used Caliper trade secrets in the prosecution of the '015 Patent. *See* Caliper's Counterclaims at 9, ¶ 27. This claim, like the State Action, puts at issue the communications between Caliper and Rowland and Flehr, which must be produced. *In re National Mortgage Equity Corp.,* 120 F.R.D. 687, 692 (C.D.Cal.1988). Under this doctrine, however, the production of privileged communications with other counsel whose advice is *not* at issue is not required. *See Rutgard v. Haynes,* 185 F.R.D. 596, 598 (S.D.Cal.1999)(discussing situations in which a client's claims against his attorney do and do not result in waiver of attorney client privilege as to communications with other attorneys).

ACLARA also asserts that statements made by Caliper to its investors and in a press release give rise to waiver because they pose "serious risk of truth garbling or prejudice to ACLARA." ACLARA Counter Motion at 9 (quoting *Electro Scientific Industry, Inc. v. General Scanning, Inc.,* 175 F.R.D. 539, 544 (N.D.Cal.1997); *see also* Exhibits A and B to Crotty Declaration (telephone conference with Caliper investors and Caliper press release addressing ACLARA litigation). However, in *Electro Scientific Industries,* the court held that so long as a party does not seek to use statement made outside of the judicial process in the litigation, they remain "extrajudicial" and pose no danger of truth garbling. *Id.* at 543. Here, the statements cited by ACLARA contain nothing particularly troubling, essentially mirroring the positions Caliper has already taken in this litigation. Moreover, there is no indication that Caliper has attempted to use these statements in this litigation. Therefore, the Court rejects ACLARA argument that Caliper's public statements have created a broader subject matter waiver and finds instead that the waiver is limited to communications between Caliper and Rowland and Flehr.

2. *The Second 1998 Opinion Letter*

ACLARA also seeks an order compelling production of the complete version of an opinion letter, dated December 14, 1998, on which Caliper intends to rely as part of its advice of counsel defense. ACLARA asserts that it is entitled to the entire letter because the redacted portion is indivisible from the subject matter of the rest of the letter and is therefore relevant to Caliper's advice of counsel defense (and ACLARA's ability to respond to that defense). ACLARA Counter Motion at 11. As noted above, Caliper concedes that it has waived attorney-client privilege as to the validity, enforceability and infringement of the '015 patent from the date that patent issued. Caliper also concedes that the first section of that letter, which discusses the enforceability of the '015 patent, falls under this waiver. However, Caliper asserts that the second half of the letter, which it says discusses possible state law causes of action that Caliper may be able to bring against Rowland, is not relevant to Caliper's advice of counsel defense. Moreover, Caliper asserts that had it produced the complete letter, it might indeed have opened itself to a broad subject matter waiver because it would have voluntarily produced a communication that did not relate to its advice of counsel defense.

*14 In order for the Court to make a determination as to whether the redacted portion of the December 14, 1998 Opinion Letter falls within the scope Caliper's

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)
**(Cite as: 2001 WL 777083 (N.D.Cal.))**

Page 14

advice of counsel waiver, Caliper is directed to submit that letter to this Court for *in camera* review.

IV. *CONCLUSION*

The Court hereby GRANTS in part Caliper's Motion To Compel Production Of Documents and finds that ACLARA has waived attorney-client privilege for communications between ACLARA and any Flehr attorney with respect to all documents that relate to the applications and prosecution of the applications leading to the issuance of the '015 patent, beginning in December 1995, when Rowland first began to represent Caliper and ending on the date the '015 patent issued, May 12, 1998. The parties are directed to meet and confer to determine which documents listed on ACLARA's privilege log fall within the scope of that waiver. ACLARA's Counter Motion To Compel Production Of Documents is DENIED to the extent that it seeks an order compelling further production of documents by Caliper based on its production of the 1996 Opinion Letters. However, ACLARA's motion is GRANTED to the extent that Caliper has withheld any documents on the basis that they contain privileged communications between Caliper and Flehr attorneys other than Rowland. To the extent that ACLARA seeks in its counter motion an order compelling the production of the redacted portion of the December 14, 1998 Opinion Letter, that issue will be addressed in a separate order, which will be issued after the Court has had an opportunity to review the letter, in its entirety, *in camera*. Caliper is directed to provide the Court with a copy of that letter forthwith.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2001 WL 777083 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.