1  HAROLD M. BRODY State Bar No. 84927
   hbrody@proskauer.com
2  JEREMY M. MITTMAN State Bar No. 248854
   jmittman@proskauer.com
3  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
4  Los Angeles, CA  90067-3206
   Telephone:    (310) 557-2900
5  Facsimile:    (310) 557-2193

6  PROSKAUER ROSE LLP
   BETTINA B. PLEVAN *(Pro Hac Vice)*
7  bplevan@proskauer.com
   JOSHUA F. ALLOY *(Pro Hac Vice)*
8  jalloy@proskauer.com
   1585 Broadway
9  New York, NY 10036-8299
   (212) 969-3000
10 (212) 969-2900 (fax)

11 Attorneys for Defendants,
   BRISTOL-MYERS SQUIBB COMPANY;
12 E.R. SQUIBB & SONS, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIN FUNG, on behalf of himself and others similarly situated, | Case No. 3:07-cv-04109-WHA |
| Plaintiffs, | **DEFENDANTS' NOTICE PROPOSAL PURSUANT TO THE COURT'S DECEMBER 17, 2007 ORDER** |
| v. | |
| BRISTOL-MYERS SQUIBB COMPANY; E.R. SQUIBB & SONS, LLC; and DOES 1 to 50, Inclusive, | Date:  December 31, 2007 |
| Defendants. | |

Pursuant to the Court's Order dated December 17, 2007, Defendants Bristol-Myers Squibb Company ("BMS") and E.R. Squibb & Sons, LLC (collectively "Defendants") hereby oppose the

**DEFENDANTS' NOTICE PROPOSAL**

1  publication or sending of any notice to putative class members advising them of their rights, and in
2  the alternative, submit its proposed plan for the publication and content of a notice should it be so
3  ordered.  In addition, Defendants reserve their right to seek sanctions and/or costs against
4  Plaintiff's counsel pending the outcome of the Court's review of the in camera submissions made
5  by Plaintiff's counsel concerning the allegations that the Plaintiff had no knowledge of the
6  existence of this class action lawsuit and that he never authorized such a filing.

**I.     Notice Is Unnecessary Given The Lack Of Publicity And Absence Of Any Evidence That Putative Class Members Have Relied On This Action To Their Detriment.**

In light of Plaintiff Kin Fung's September 25, 2007 deposition testimony in the *Menes v. Roche Laboratories, Inc.*, No. CV07-01444R (FFMx) (C.D. Cal.)) action, as detailed in Defendants' November 29, 2007 Motion to Dismiss, there is a serious question whether this "class" action was ever appropriately filed in the first place.  Indeed, unless and until Plaintiff's counsel provides evidence that Kin Fung authorized a *class* action to be filed and approved and had knowledge of *this* class action being filed, the notion that there is a putative class that needs to be protected even after the dismissal of the case is entirely a fiction created by Plaintiff's counsel.

Rule 23 does not require notice of precertification dismissal except where the court concludes that such notice is necessary for one or more of the following reasons: (1) to protect defendants by preventing plaintiffs from appending class allegations merely to obtain a more favorable settlement; (2) to protect the class from objectionable structural relief or depletion of funds available to pay class claims, e.g., through collusive settlement; or (3) to protect the class from prejudice based on their reliance on the filing or pendency of the action.  *See Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989).

Here, the first two reasons under *Diaz* clearly do not apply.  Moreover, given the complete lack of publicity that this case has received and the slim possibility that any putative class member has, or could possibly have, relied on its pendency to his or her detriment, this Court should refrain from ordering any notice whatsoever.  *See Kas v. Chevron Corp.*, 1992 U.S. Dist. LEXIS 13635, *7-*8 (N.D.Cal. 1992) (after dismissal of class action, notice was not necessary where the

1  prospective class would likely not have relied upon the suit "due to the absence of media
2  attention" in that case and noting that  "[a]ny [prospective class member] desiring to assert these
3  claims [in the future] has adequate time to do so*.")*; *Hockert Pressman & Flohr Money Purchase*
4  *Plan v. Am.*, 1995 U.S. Dist. LEXIS 17608, *3 (N.D.Cal. 1995)  (Notice not necessary after
5  dismissal of class action because "based on the minimal media coverage or publicity regarding this
6  litigation, among other factors, there are no facts or circumstances presented by this case which
7  indicate that potential class members have, to their detriment, refrained from filing suit in reliance
8  upon the pendency of the purported class action.").
9         As Plaintiff's counsel conceded at the November 15 Case Management Conference, this
10 specific case has received little or no publicity.  A Lexis-Nexis news search fails to uncover even a
11 single newspaper or news article written about the case, and even a simple Google search reveals
12 no media coverage whatsoever.  Indeed, the only "publicity" that this case has received has been a
13 single link to the complaint from a website maintained by Plaintiff's counsel to try and recruit
14 plaintiffs to the various overtime class action lawsuits they have filed against pharmaceutical
15 companies (www.pharmarepovertime.com).  As of the date of this submission, that website was
16 temporarily shut down for revisions.
17        In addition, pharmaceutical sales representatives at BMS and its predecessors – like all
18 other sales representatives in the pharmaceutical industry – have been compensated in the exact
19 same manner (i.e., without overtime) for decades.  This practice has not changed since the filing of
20 this lawsuit.  Given that a wage-hour claim for overtime was only first brought against BMS in
21 mid-2007, as well as the three to four-year statute of limitations period on a wage claim in
22 California, it is highly unlikely, if not improbable, that any "putative class members" have relied
23 on this lawsuit to their detriment.  Plaintiff's counsel, not surprisingly, has not submitted any
24 evidence indicating that even a single BMS sales rep has relied on the lawsuit to his or her
25 detriment.  In any event, putative class members could always opt-in to the nationwide collective
26 action under the Fair Labor Standards Act, *Amendola v. Bristol-Myers Squibb Co.*, 07 cv 6088
27 (DLC) (S.D.N.Y.), that also seeks overtime and was filed by the same consortium of plaintiffs
28 attorneys who have been litigating this case.

2
**DEFENDANTS' NOTICE PROPOSAL**

Based on the foregoing, Defendants respectfully request that the Court exercise its broad discretion and refrain from ordering any notice to putative class members.

## II. If Notice Is Ordered, It Should Be In The Most Narrowly Tailored And Least Disruptive Form.

In the event the Court concludes that some form of notice to the putative class is necessary, Defendants believe the notice should be published in the newspaper and should not be directly distributed via an intrusive mass mailing to every pharmaceutical sales rep who Plaintiff's counsel claims is part of the "class" (i.e., all current and former sales reps who worked for Defendants in California since June 28, 2003).

In the first place, this Court has already rejected out of hand precisely such a proposal by Plaintiff's counsel. *See November 15 Hearing Transcript at 3-10* ("Maybe we order Mr. Spiro to take out a full-page ad in the L.A. Times, and you pay for it Mr. Spiro, but I don't see why you get to impose a burden [a mass mailing] on the defense just because you picked a plaintiff. There's no way I'm going to order what you've just asked for.")  As this Court noted, a mass mailing would place an undue hardship on Defendants and cause them to expend considerable time and money in gathering the names and addresses of both current and former employees who worked in California since 2003. Such state-specific information is not maintained by Defendants in the ordinary course of business, and would have to be culled together from the records of all pharmaceutical sales reps nationwide.

It would also be an unreasonable violation of the privacy rights of the current and former sales reps who receive the mailing, who are neither a part of this lawsuit nor have ever indicated *any* desire to be a part of the lawsuit, and who have never received any mailings to date about the case. Indeed, a mass mailing would publicize the case to a degree that is unprecedented, given that the *only* publicity generated specific to the *Fung* case has been a link to the complaint from a website maintained by Plaintiff's counsel that is no longer even operable. In addition, given the lack of publicity of the lawsuit to date, a direct mass mailing of the notice would raise more questions than it answers and would inundate Defendants with phone calls and inquiries from its

3
**DEFENDANTS' NOTICE PROPOSAL**

1    employees – further disrupting Defendants' business and day-to-day operations.

2    Moreover, there does not exist a definable "putative class" to whom a notice could be
3    mailed. Defendants dispute that Plaintiff Fung could ever have appropriately represented any
4    class of pharmaceutical sales representatives, and he cannot even minimally satisfy the
5    requirements of Rule 23 with respect to "all" sales reps who ever worked in California, without
6    regard to business division, job level, job function, or geographic region. Indeed, Plaintiff's
7    counsel has introduced no evidence that Fung – who was a Senior Territory Business Manager in
8    the Virology Division, West Region, Los Angeles District – has anything in common with or is
9    typical of other Territory Business Managers in other districts within the West Region of
10   Virology, let alone Territory Business Managers in the Oncology, Neuroscience, Immunoscience,
11   or Cardiovascular Metabolics divisions, each of which have a completely separate organizational
12   structure and management from Virology, sell completely different pharmaceutical products, have
13   different marketing and sales strategies, and even have different customer bases.

14   Accordingly, Defendants submit that the most appropriate mode of publishing notice to
15   current and former sales reps who worked for BMS in California would be for Plaintiff's counsel
16   to publish the notice in the two newspapers in California with the largest daily circulations – the
17   Los Angeles Times and San Francisco Chronicle – for a period of two weeks. This would insure
18   that the notice is appropriately targeted to those sales reps who live and work(ed) in California, is
19   more likely to reach retired sales reps who are no longer in the industry, is not overly intrusive to
20   the sales reps, and avoids placing any burden whatsoever – financial or otherwise – on
21   Defendants.[1]

---

[1] Although the only "publicity" related specifically to the case has been a link to the complaint from a website maintained by plaintiff's counsel, Defendants believe that an internet advertisement is too broad of a publication, does not focus on the proper audience for the notice (California-based sales reps), and is unlikely to reach former pharmaceutical sales reps who are no longer working in the industry. Significantly, just as the notice should not reference Plaintiff's counsel in any manner, it also should not be posted or made available on any of Plaintiff's counsel's websites, nor lead visitors to their websites. Defendants are concerned that an internet advertisement – on a website such as Café Pharma, for example, where plaintiff's counsel typically advertises and attempts to recruit pharmaceutical sales reps throughout the industry – would only serve as yet another recruiting tool.

4
**DEFENDANTS' NOTICE PROPOSAL**

Defendants believe that the text of the Notice should be as follows:

**Attention California Bristol-Myers Squibb Sales Reps Since 2003**

- The case captioned *Fung v. Bristol-Myers Squibb Company and E.R. Squibb & Sons, LLC*, Case No. 3:07-cv-04109-WHA, in the United States District Court for the Northern District of California, was dismissed by order of the Court on December ___, 2007.
- As a result, if you were relying on the pendency of this action, **PLEASE TAKE NOTICE** that the statute of limitations (time limit) for filing a lawsuit for any of the claims raised in the *Fung* case continues to run as if that case had never been filed.

This Notice has been approved by the United States District Court for the Northern District of California

### III.    Sanctions And/Or Costs

Finally, pending the Court's review of any in camera submissions made by Plaintiff's counsel that would rebut Fung's testimony that he had no knowledge of the existence of this class action lawsuit and that he never authorized such a filing, Defendants seek to preserve their right to move the Court for sanctions and/or costs against Plaintiff's counsel pursuant to 28 U.S.C. § 1927 and/or the Court's "inherent power" to correct bad faith behavior or fraud. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995).

DATED: December 31, 2007                    BETTINA B. PLEVAN
                                            HAROLD M. BRODY
                                            JOSHUA F. ALLOY
                                            JEREMY M. MITTMAN

                                            PROSKAUER ROSE LLP


                                            /s/ Joshua F. Alloy
                                            ─────────────────────
                                            Joshua F. Alloy

                                            Attorneys for Defendants,
                                            BRISTOL-MYERS SQUIBB COMPANY and
                                            E.R. SQUIBB & SONS, LLC